1 SULLIVAN, HILL, LEWIN, REZ & ENGEL
  A Professional Law Corporation
2 Cynthia A. Fissel, SBN 164153
  550 West "C" Street, Suite 1500
3 San Diego, California 92101
  Telephone:    (619) 233-4100
4 Fax Number:  (619) 231-4372
  fissel@shlaw.com
5
  James S. Rigberg, Pro Hac Vice (Arizona Bar No. 015267)
6 MARISCAL, WEEKS, McINTYRE
       & FRIEDLANDER, P.A.
7 2901 North Central Avenue, Suite 200
  Phoenix, Arizona 85012-2705
8 Telephone:    (602) 285-5000
  Fax Number:  (602) 285-5100
9 jim.rigberg@mwmf.com

10 Attorneys for Defendant CRISIS MANAGEMENT, LLC

11

12 **UNITED STATES DISTRICT COURT**

13 **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14 YOU WALK AWAY, LLC, a California limited liability company,, | ) Case No. 08 CV 0529 WQH BLM |
| | ) |
| 15         Plaintiff, | ) **REPLY MEMORANDUM IN** |
| | ) **SUPPORT OF CRISIS** |
| | ) **MANAGEMENT, LLC' S MOTION** |
| 16 v. | ) **TO DISMISS, STAY, OR** |
| | ) **TRANSFER VENUE TO THE** |
| 17 CRISIS MANAGEMENT, LLC, an | ) **DISTRICT OF ARIZONA** |
| Arizona corporation, and WALK AWAY | ) |
| 18 PLAN, LLC, a business entity of unknown | ) Date:      May 19, 2008 |
| form, | ) Time:      11:00 a.m. |
| 19 | ) Crtm.:       4 |
|         Defendants. | ) Judge:  Hon. William Q. Hayes |
| 20 | ) |

21

                                **I.**

22

                            **Introduction**

23

24     On February 22, 2008, Defendant Crisis Management, L.L.C. ("Crisis Management") filed

25 an application with the United States Patent and Trademark Office ("USPTO") for the marks "Walk

26 Away Plan" and "www.walkawayplan.com." By letter dated February 29, 2008, Plaintiff You Walk

27 Away, L.L.C. ("You Walk Away") advised that it had filed an application with the USPTO for its

28 marks, "You Walk Away" and "www.youwalkaway.com." In the same letter, You Walk Away

1    alleged that Crisis Management's Walk Away Plan marks infringed on the You Walk Away marks.

2    Crisis Management wanted its right to continue using the Walk Away Plan confirmed before the

3    USPTO took any action with respect to the pending trademark applications. Accordingly, on March

4    13, 2008, Crisis Management filed an action seeking a Declaratory Judgment in the United States

5    District Court for the District of Arizona (the "Arizona Action"). On March 21, 2008, You Walk

6    Away commenced this action against Crisis Management. You Walk Away does not dispute that the

7    parties and issues involved in these two lawsuits are the same. Accordingly, under the first-to-file

8    rule, the Court should dismiss (or stay or transfer to the Arizona District Court) this action in favor

9    of the earlier-filed Arizona Action.

10        You Walk Away argues, incorrectly, that the Court should decline applying the first-to-file

11    rule because the Arizona Action was an "anticipatory, bad faith" lawsuit. Crisis Management

12    brought the Arizona Action based on the dispute over which of two pending trademark applications

13    should be approved by the USPTO, not because it received a specific, concrete threat of an imminent

14    lawsuit. Contrary to You Walk Away's allegations, Crisis Management never sought more time to

15    respond to the allegations of trademark infringement in the February 29, 2008 letter. Crisis

16    Management ignored, if not outright rejected, You Walk Away's requests to engage in settlement

17    discussions. Indeed, in the two direct communications between the parties' representatives that

18    occurred before this lawsuit, Crisis Management advised that it did not believe it had infringed upon

19    or otherwise violated any of You Walk Away's rights. You Walk Away's decision to wait to file

20    suit rested on its own hope that Crisis Management might settle, not on anything Crisis Management

21    said or did. Under the circumstances, no good reason exists for this Court to disregard the first-to-

22    file rule.

23                                                    **II.**

24    **Crisis Management Did Not Bring the Arizona Action in Response to a Specific, Concrete**

25                            **Indication that Suit Was Imminent**

26        You Walk Away has asserted that the Arizona Action was an "anticipatory" lawsuit. In the

27    Ninth Circuit, "[a] suit is 'anticipatory' for the purposes of being an exception to the first-to-file

28    rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit

1  by the defendant was imminent." *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness*, 179

2  F.R.D. 264, 271 (C.D. Cal. 1998). You Walk Away never gave such an indication to Crisis

3  Management.

4        You Walk Away's suggestion that its February 29, 2008 letter was an indication to Crisis

5  Management of "imminent suit" is incorrect. This letter did not state that Crisis Management's

6  failure to perform as demanded would result in filing "suit." Instead, You Walk Away made the

7  veiled threat that it was "prepared to pursue all remedies available to enforce its rights" and would

8  take "further legal action" if Crisis Management did not confirm it would discontinue using the

9  Walk Away Plan marks within ten days. As reflected in the March 12, 2008 e-mail attached as

10  Exhibit "1" to Chad Ruyle's Declaration, after the February 29, 2008 letter's ten-day deadline

11  expired, You Walk Away indicated that it wanted to "work something out without resorting to

12  litigation." The same e-mail states that if Crisis Management did not return Ruyle's telephone calls

13  by the end of the day, he would "heed the advice" of his attorneys – without saying what that

14  "advice" was.

15        To serve as an indication of "imminent suit," a demand letter must do something more than

16  make "veiled threats of legal action." *Guthy-Renker Fitness*, 179 F.R.D. at 271. The demand letter

17  in *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2006), for

18  example, contained a lengthy history of the parties' dispute, an analysis of the harms allegedly

19  caused, and a statement that "'unless settlement is reached within five (5) business days a lawsuit

20  will be filed.'" *See also Coldwater Creek, Inc. v. Brighton Collectibles, Inc.*, 83 U.S.P.Q. 2d 1957,

21  2007 U.S. Dist. LEXIS 54780, 9 (D. Idaho 2007) (demand letter explicitly threatened "to file suit")

22  (a copy of which is attached as Exhibit "1" to the Declaration of Cynthia A. Fissel). On the other

23  hand, a demand letter stating that a party would "seek indemnification" if other party did not abide

24  by license agreement "gave no indication that a lawsuit was imminent." *Bryant v. Oxxford Express,*

25  *Inc.*, 181 F. Supp. 2d 1045, 1048 (C.D. Cal. 2000). Moreover, even a threat of imminent suit may

26  dissipate when a claimant demonstrates that deadlines in a demand letter might not be enforced.

27  *M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, 2003 U.S. Dist. LEXIS 27257, 13-14 (N.D. Cal.

28  2003) (a copy of which is attached as Exhibit "2" to the Fissel Declaration).

1      The District Court's treatment of the demand letter in *Royal Queentex Enterprises, Inc. v.*

2 *Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. 2000) (a copy of which is attached as

3 Exhibit "3" to the Fissel Declaration) demonstrates that the February 29, 2008 letter was not

4 sufficient to indicate that suit was "imminent." Though the USPTO had denied registration to its

5 "Leg Avenue" mark, Royal Queentex continued to use it. On October 21, 1999, Sara Lee sent Royal

6 Queentex a letter, stating that it hoped the matter could be resolved amicably, but demanding

7 "prompt written assurances that Royal Queentex will immediately discontinue" any mark containing

8 the words "leg" or "legs." Sara Lee's demand letter further stated:

9         If we do not receive a response with these written assurances within fourteen (14)
        days of the date of this letter, L'EGGS Products has authorized this firm to take
10         further legal action necessary and appropriate to enforce its valuable trademark rights.

11

12 2000 U.S. Dist. LEXIS 10139 at 5. The Court agreed that this letter "constituted specific, concrete

13 indications of a *legal dispute*, but not specific, concrete indications that *suit was imminent*." 2000

14 U.S. Dist. LEXIS 10139 at 16 (emphasis added). The threat contained in the Sara Lee letter is

15 identical to the February 29, 2008 letter's threat – "further legal action." You Walk Away,

16 moreover, clearly indicated in Ruyle's communications that it was interested in settling, not

17 litigating.

18      Under the circumstances, You Walk Away never provided a specific, concrete indication to

19 Crisis Management that suit was imminent. Absent such an indication, You Walk Away cannot

20 maintain that the Arizona Action was anticipatory or that the first-to-file rule should not be observed.

21 **III.**

22 **Crisis Management Filed the Arizona Action Because of You Walk Away's Pending**

23 **Trademark Application**

24      Crisis Management's motivation for filing the Arizona Action was not any "threat" that may

25 have appeared in You Walk Away's February 29, 2008 letter. Indeed, Crisis Management did not

26 really believe that You Walk Away was going to file suit "any time soon." (*See* Supplemental

27 Declaration of Paul Helbert, dated May 9, 2008 at ¶ 5 ("Supplemental Helbert Declaration")). The

28 portion of that letter that caught Crisis Management's attention was the statement that You Walk

1 Away had applied for a trademark relative to the You Walk Away marks. (*See* Supplemental

2 Helbert Declaration at ¶¶ 7, 8; Declaration of Paul Helbert, dated April 11, 2008 at ¶ 4 ("Original

3 Helbert Declaration")).  Crisis Management had no obligation to wait to have such a determination

4 made before filing suit.  In fact, "a declaratory judgment action is an appropriate vehicle to 'alleviate

5 the necessity of waiting indefinitely for a patent owner to file an infringement action.'" *Guthy-*

6 *Renker Fitness*, 179 F.R.D. at 272 (quoting *KPR, Inc. v. C&F Packaging Co., Inc.*, 1993 U.S. Dist.

7 LEXIS, 20177, 30 U.S.P.Q. 2d (BNA) 1320, 1324 (N. D. Tex. 1993)).  Crisis Management's use of

8 a declaratory judgment suit to fulfill this purpose indicates that the Arizona Action was not

9 anticipatory. (*See* Supplemental Helbert Declaration at ¶ 9).

10        You Walk Away's suggestion that the Arizona Action is anticipatory based on the delay

11 between filing and serving the Complaint in that matter is incorrect.  Under the Federal Rules of

12 Civil Procedure, Crisis Management has 120 days to serve the Complaint on You Walk Away.  Thus

13 far, only 60 of those days have elapsed.  Crisis Management has refrained from service while it

14 decides whether to amend that Complaint, as a matter of right, to include other claims (including

15 claims for trademark infringement and/or relating to copyright infringement allegations that did not

16 appear in the February 29, 2008 letter).  Regardless of the reason, however, simply delaying service

17 does not mean that Crisis Management was "not alleviating the necessity of waiting indefinitely" for

18 You Walk Away "to file an infringement action." *Guthy-Renker Fitness*, 179 F.R.D. at 272.  Courts

19 have concluded that service delays much greater than 60 days are not indicative of an action being

20 "anticipatory." *See Guthy-Renker Fitness*, 179 F.R.D. at 272 (delay of 87 days); *Ward v. Follett*

21 *Corp.*, 158 F.R.D. 645, 649 (N.D. Cal. 1994) (delay of almost four months).

22                                            **IV.**

23 **Evidence of "Bad Faith" Sufficient to Justify Disregarding the First-to-File Rule Does Not**

24                                          **Exist**

25        Ordinarily, courts do not disregard the first-to-file rule even with respect to an anticipatory

26 suit unless it is accompanied by some bad faith conduct on the part of the filing party. *Mead Corp.*

27 *v. Stuart Hall Co.*, 679 F. Supp. 1446, 1450 (S.D. Ohio 1987). *See, e.g., Charles Schwab & Co., Inc.*

28 *v. Duffy*, 1998 U. S. Dist. LEXIS 19606, 49 U.S.P.Q. 2d (BNA) 1862, 1864 (N.D. Cal. 1998)

1   (Court's quarrel was not with the fact that declaratory judgment plaintiff won the "race to the

2   courthouse," but with the tactics employed to do so, such as misleading opponent as to its

3   intentions); *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139, 13-

4   14 (N. D. Cal. 2000) (concluding that, generally, courts decline to exercise jurisdiction over

5   anticipatory suits when a "plaintiff caused defendant to delay filing suit by representing that plaintiff

6   was considering merits of claim").

7        Crisis Management did nothing to lead You Walk Away into delaying the commencement of

8   this action. The following facts are undisputed:

9   - Paul Helbert, Crisis Management's General Manager, did not see the February 29, 2008 letter
      for at least a few days after Crisis Management received it. (Supplemental Helbert
10     Declaration at ¶ 1; Original Helbert Declaration at ¶ 5).

11  - On March 8, 2008, Chad Ruyle of You Walk Away left a voicemail message for Crisis
12     Management on the number shown on its website; no-one responded. (Declaration of Chad
       Ruyle at ¶ 4).

13
14  - On March 10, 2008 – the day on which the "demand" in the February 29, 2008 letter was to
       expire – Ruyle again left a voicemail message for Crisis Management. (Declaration of Chad
15     Ruyle at ¶5).

16  - On March 11, 2008 – the day after the February 29, 2008 letter expired – Helbert and Ruyle
       had a telephone conversation. (Supplemental Helbert Declaration at ¶ 2; Ruyle Declaration
17     at ¶ 6).

18
19  - In that telephone conversation, Helbert advised that he did not believe that Crisis
       Management's use of Walk Away Plan marks infringed or otherwise violated You Walk
20     Away's rights. (Supplemental Helbert Declaration at ¶ 3; Original Helbert Declaration at ¶
       7).

21  - Helbert advised that he would be consulting with Crisis Management's attorneys to
22     determine how to respond to the February 29, 2008 letter. (Supplemental Helbert
       Declaration at ¶ 4; Original Helbert Declaration at ¶ 7).

23
24  - On March 12, 2008, Ruyle sent an e-mail stating that You Walk Away wanted to "work
       something out without resorting to litigation." The same e-mail indicated that Helbert was
25     not responding to Ruyle's telephone calls that day. (Ruyle Declaration at ¶ 7).

26  - On March 13, 2008, counsel for You Walk Away telephoned counsel for Crisis Management.
       In this conversation, counsel for Crisis Management reiterated Crisis Management had not
27     infringed or otherwise violated You Walk Away's rights. (*See* Supplemental Declaration of
       James S. Rigberg at ¶ 5).
28

1   You Walk Away has presented no evidence, that Crisis Management ever initiated any contact with

2   You Walk Away; in fact, accepting, for the moment, that You Walk Away's declarations are

3   accurate, Crisis Management appeared to take pains *not* to respond to You Walk Away.  Crisis

4   Management disputes that its representatives ever asked for more time to do anything relative to the

5   February 29, 2008 letter.  Even You Walk Away, however, does not dispute that, in both

6   communications between its personnel and those of Crisis Management, Crisis Management

7   maintained that its use of the Walk Away Plan marks did not infringe on You Walk Away's rights.[1]

8        Based on these facts, Crisis Management (a) consistently took the position that no

9   infringement claims existed and (b) at worst, was unresponsive to You Walk Away's settlement

10  overtures.  Ruyle's March 12, 2008 "confirmation" e-mail certainly reflects *his* desire to "avoid

11  litigation" and "work something out" with Crisis Management.  Curiously absent from the same e-

12  mail is any confirmation that, in their March 11, 2008 conversation, Helbert ever mentioned that he

13  felt the same way.  If anything, the March 12, 2008 e-mail's references to Helbert failing to "call

14  back" Ruyle confirm that Crisis Management was not even interested in talking about, let alone

15  settling, the trademark infringement allegations.  In the only other communication between the

16  parties' representatives, counsel for You Walk Away raised new allegations about copyright

17  infringement that had nothing to do with the February 29, 2008 letter.  Counsel for Crisis

18  Management – having already explained his client's position relative to the allegations in the

19  February 29, 2008 letter – stated that he would have to discuss the new allegations with his client.

20  To the extent You Walk Away relied on this statement as a basis for believing Crisis Management

21  was interested in negotiating, such reliance was unreasonable.

22

---

23  [1] In the March 13, 2008 conversation between counsel for the parties, counsel for You Walk Away
    alleged for the first time that Crisis Management had created its website using You Walk Away's
24  source code, and that copyright infringement and/or other claims based on the "look and feel" of the
    website may exist. (*See* Supplemental Rigberg Declaration at ¶ 6).  Counsel for Crisis Management
25  advised that he would need to discuss these allegations with his client; however, counsel for Crisis
    Management did not request additional time to deal with the allegations in the February 29, 2008
26  letter. (*See* Supplemental Rigberg Declaration at ¶ 7).

27

28

1    The cases on which You Walk Away relies merely illustrate the difference between facts that

2    support a finding that of bad faith and the facts in this case. In *Xoxide, Inc. v. Ford Motor Co.*, 448

3    F. Supp. 2d 1188 (C.D. Cal. 2006), Ford Motor Co. advised that Xoxide was violating its trademarks

4    in four different ways. Though Xoxide advised that it disagreed, it partially complied with Ford's

5    demands. Ford responded by insisting on full compliance with its demands. In reply, Xoxide sent

6    what it characterized as a confidential settlement discussion and offer which included another small

7    concession to Ford's demands. Xoxide also sought additional time to consider and respond to the

8    balance of Ford's demand. Instead, after sending the reply, Xoxide filed a declaratory judgment

9    action. The Court, not surprisingly, concluded that, while Ford was attempting to settle, Xoxide only

10    pretended to use its best efforts to negotiate so that it could preemptively file suit. Indeed, Xoxide's

11    own attorneys admitted that, while settlement was still on the table, it commenced the declaratory

12    judgment action "to 'keep our place as to filing dates and times' in the event that 'discussions later

13    broke down.'" 448 F. Supp. 2d at 1194. In *Xoxide*, unlike here, the declaratory judgment plaintiff's

14    representatives took affirmative steps to create the impression that settlement was and remained a

15    possibility when it was not.

16    Likewise, the decision to ignore the first-to-file rule in *Z-Line Designs, Inc. v. Bell'O*

17    *International, L.L.C.*, 218 F.R.D. 663 (N.D. Cal. 2003) and *Mediostream, Inc. v. Priddis Music, Inc.*,

18    2007 U.S. Dist. LEXIS 73707 (N.D. Cal. 2007) rested on facts that are different than those presented

19    here. In *Z-Line Designs*, the declaratory judgment plaintiff's attorneys requested two extensions of

20    the deadline the infringement claimant had imposed for reaching a settlement. On both occasions,

21    moreover, the infringement claimant had advised that failure to settle would result in a lawsuit. In

22    *Mediostream*, the declaratory judgment suit was filed after the plaintiff's attorney was asked whether

23    he could accept service of the infringement complaint that was being prepared. In neither case did

24    the declaratory judgment plaintiff simply take the position that no infringement had occurred and

25    ignore the claimant's invitations to enter into settlement negotiations.

26    ///

27    ///

28    ///

**V.**

**You Walk Away Has Not Identified Any Other Grounds for Disregarding the First-to-File**

**Rule**

You Walk Away contends that the Arizona Action may never proceed because "there is no certainty that the Arizona district court will exercise its declaratory judgment jurisdiction." (See Opposition, p. 8). You Walk Away has cited no authority to support the position that generalized fear of a district court not exercising its jurisdiction is grounds for refusing to stay or transfer a case. You Walk Away's purported fear, moreover, is not well-founded. In the first instance, the pending, competing trademark applications and the dispute between the parties over whether Crisis Management's marks infringe or not is the proper subject of a declaratory judgment claim. In the second instance, given the factors typically considered in determining whether a District Court should exercise its discretionary power to hear a declaratory judgment action, the likelihood that the Arizona Action will proceed is high. *See e.g. National Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1115 (D. Alaska 1998) (discussing these factors).

**VI.**

**Conclusion**

For the foregoing reasons, Crisis Management's Motion to Dismiss, Stay, and/or Transfer this action should be granted.

Dated:    May 12, 2008            MARISCAL, WEEKS, McINTYRE
                                 & FRIEDLANDER, P.A.

                                 AND

                                 SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                 A Professional Law Corporation


                                 By:    /s/ Cynthia A. Fissel
                                        Cynthia A. Fissel
                                        Attorneys for Defendant
                                        CRISIS MANAGEMENT, LLC