1  SULLIVAN, HILL, LEWIN, REZ & ENGEL
   A Professional Law Corporation
2  Cynthia A. Fissel, SBN 164153
   550 West "C" Street, Suite 1500
3  San Diego, California 92101
   Telephone:   (619) 233-4100
4  Fax Number: (619) 231-4372
   fissel@shlaw.com
5
   James S. Rigberg, Pro Hac Vice (Arizona Bar No. 015267)
6  MARISCAL, WEEKS, McINTYRE
         & FRIEDLANDER, P.A.
7  2901 North Central Avenue, Suite 200
   Phoenix, Arizona 85012-2705
8  Telephone:   (602) 285-5000
   Fax Number: (602) 285-5100
9  Jim.rigberg@mwmf.com

10 Attorneys for Defendant, CRISIS MANAGEMENT, LLC

11                  **UNITED STATES DISTRICT COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13
   YOU WALK AWAY, LLC, a California      )   Case No. 08 CV 0529 WQH BLM
14 limited liability company,,           )
                                         )   **DECLARATION OF. CYNTHIA A.**
15            Plaintiff,                  )   **FISSEL IN SUPPORT OF CRISIS**
                                         )   **MANAGEMENT, LLC' S MOTION**
16 v.                                    )   **TO DISMISS, STAY, OR TRANSFER**
                                         )   **VENUE TO THE DISTRICT OF**
17 CRISIS MANAGEMENT, LLC, an            )   **ARIZONA**
   Arizona corporation, and WALK AWAY    )
18 PLAN, LLC, a business entity of unknown )  Date:      May 19, 2008
   form,                                 )   Time:      11:00 a.m.
19                                       )   Crtm.:     4
             Defendants.                 )   Judge: Hon. William Q. Hayes
20                                       )
                                         )
21

22       I, Cynthia A. Fissel, declare as follows:

23       1.      I am an attorney duly admitted to practice law in the courts of the State of California

24 and I am of counsel to the law firm of Sullivan, Hill, Lewin, Rez & Engel, attorneys of record for

25 defendant Crisis Management, LLC. I have personal knowledge of the facts stated in this

26 declaration, except as to those facts stated on information and belief, which I believe to be true. If

27 called as a witness, I would be competent to testify to the following facts.

28

2.      Attached hereto as Exhibit "1" is a copy of *Coldwater Creek, Inc. v. Brighton Collectibles, Inc.*, 83 U.S.P.Q. 2d 1957, 2007 U.S. Dist. LEXIS 54780, 9 (D. Idaho 2007).

3.      Attached hereto as Exhibit "2" is a copy of *M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, 2003 U.S. Dist. LEXIS 27257, 13-14 (N.D. Cal. 2003).

4.      Attached hereto as Exhibit "3" is a copy of *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, 2000 U.S. Dist. LEXIS 10139 (N.D. Cal. 2000).

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing matters are true and correct and that this declaration was executed on May 12th, 2008 at San Diego, California.


                                              */s/ Cynthia A. Fissel*
                                              Cynthia A. Fissel

**EXHIBIT 1**

LexisNexis® *Total Research System*                    Switch Client | Preferences | Sign Off | ? Help

Search \ Research Tasks \ Get a Document \ *Shepard's®* \ Alerts \ Total Litigator \ Transactional Advisor \ Cour

Service: **Get by LEXSEE®**
Citation: **2007 U.S. Dist. LEXIS 54780**

*2007 U.S. Dist. LEXIS 54780, \*; 83 U.S.P.Q.2D (BNA) 1957*

⬆ View Available Briefs and Other Documents Related to this Case

COLDWATER CREEK, INC., Plaintiff, v. BRIGHTON COLLECTIBLES, INC., Defendant.

CASE NO. CV06-355-N-EJL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

2007 U.S. Dist. LEXIS 54780; 83 U.S.P.Q.2D (BNA) 1957

July 27, 2007, Decided
July 27, 2007, Filed

**PRIOR HISTORY:** Brighton Collectibles, Inc. v. Coldwater Creek, Inc., 2006 U.S. Dist. LEXIS
85598 (S.D. Cal., Nov. 21, 2006)

Judge Profile **($)**
View a summary by nature of suit of the civil cases heard by this judge, excerpted from the
CourtLink Judicial Strategic Profile.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to dismiss or stay plaintiff
corporation's suit, which sought a declaration of non-infringement of defendant's
copyrights, a declaration of non-infringement of defendant's trade dress, a declaration of
no false designation of origin, and a declaration of no unfair competition. Five days after
plaintiff filed its declaratory judgment action, defendant filed suit against plaintiff in a
California district court.

**OVERVIEW:** On August 23, 2006, defendant's counsel sent plaintiff a letter, accusing
plaintiff of infringing defendant's copyrights and trade dress. The letter stated that
defendant's counsel had been instructed to file suit against plaintiff if plaintiff did not
comply with defendant's demands. Defendant agreed to give plaintiff until September 14,
2006, to respond. Plaintiff filed the instant declaratory judgment action under the
Declaratory Judgment Act, 28 U.S.C.S. § 2201, on September 7, 2006. The court
concluded that plaintiff's action was filed in anticipation of defendant's impending
infringement action, which gave the appearance of forum shopping; thus, an exception to
the first to file rule applied, and the court would not hear plaintiff's action. The August 23
letter to plaintiff offered a specific, concrete indication that a suit was imminent. A
September 14, 2006 letter from plaintiff's counsel to defendant's counsel in which
plaintiff's counsel stated that the threat of imminent litigation contained in the August 23
letter required plaintiff to respond proactively showed that plaintiff considered the August
23 letter to be a specific threat of imminent suit.

**OUTCOME:** The court granted defendant's motion to dismiss.

**CORE TERMS:** imminent, declaratory judgment actions, hear, infringement, anticipatory, concrete, declaratory judgment, file suit, declaratory relief..., legal action, trade dress, unfair competition..., anticipation, declaration, designation, impending, shopping, declare, patent, legal relations, copyright infringement, legitimate business, non-infringement, declaratory, proactively, clarify, lawsuit, desist, cease, oral argument

## LEXISNEXIS® HEADNOTES                                              ⊟ **Hide**

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion 🔧

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Factors 🔧

**HN1**⚓ Under the Declaratory Judgment Act (Act), 28 U.S.C.S. § 2201, a court may declare the rights and other legal relations of a party. 28 U.S.C.S. § 2201. The Act confers on federal courts unique and substantial discretion in determining whether to declare the rights of litigants or to decline to enter a declaratory judgment. A court, within its discretion, should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations at issue, and (2) terminate or afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. The purpose of the Act is to relieve potential defendants from the threat of, impending litigation which a harassing adversary might brandish, while initiating a suit at his leisure--or never. More Like This Headnote

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Factors 🔧

**HN2**⚓ A court should award declaratory relief only in a case of actual controversy. 28 U.S.C.S. § 2201. To establish that a particular declaratory action presents an actual case or controversy, a party is required to show, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief. More Like This Headnote

Civil Procedure > Judicial Officers > Judges > Discretion 🔧

Governments > Courts > Judicial Comity 🔧

**HN3**⚓ The first to file rule is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. The first to file rule exists to promote efficiency and should not be disregarded lightly. However, there are exceptions to the first to file rule. A court may, in its discretion, depart from the first to file rule, when the filing of the first suit evidences bad faith, anticipatory suit, and/or forum shopping. More Like This Headnote

Civil Procedure > Judicial Officers > Judges > Discretion 🔧

Governments > Courts > Judicial Comity 🔧

**HN4**⚓ The United States Court of Appeals for the Ninth Circuit has not given explicit guidance as to what should be deemed "anticipatory," and therefore might warrant a departure from the first to file rule, but has left this to the discretion of the district courts. More Like This Headnote

Governments > Courts > Judicial Comity 🔧

**HN5**⚓ The United States District Court for the Central District of California found that an action is anticipatory and should be dismissed when the plaintiff in a first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent. However, such circumstances should be distinguished from veiled threats of legal action. More Like This Headnote

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion 🔍

Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Factors 🔍

Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview 🔍

Governments > Courts > Judicial Comity 🔍

*HN6* ± In the context of determining whether to apply the first to file rule, the United States Courts of Appeals for Circuits other than the Ninth Circuit have explicitly ruled a court should decline to hear declaratory judgment cases when an action constitutes forum shopping. The United States Court of Appeals for the Seventh Circuit has held where a declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later. More Like This Headnote

## ⯅Available Briefs and Other Documents Related to this Case:

U.S. District Court Motion(s)
U.S. District Court Pleading(s)

**COUNSEL:** **[\*1]** For Coldwater Creek Inc, Plaintiff: Bernard William McHugh ▾, LEAD ATTORNEY, Ford Elsaesser ▾✔, LEAD ATTORNEY, Elsaesser Jarzabek Anderson Marks Elliott & McHugh, Sandpoint, ID; Cindy Elliott ▾✔, LEAD ATTORNEY, ELSAESSER JARZABEK ANDERSON MARKS & ELLIOTT, Sandpoint, ID; Peter J Brann ▾✔, LEAD ATTORNEY, Stacy O Stitham ▾, BRANN & ISAACSON, Lewiston, ME.

For Brighton Collectibles, Inc., Defendant: Bradlee R Frazer ▾✔, LEAD ATTORNEY, Hawley Troxell Ennis & Hawley, Boise, ID.

**JUDGES:** Honorable Edward J. Lodge ▾, U. S. District Judge.

**OPINION BY:** Edward J. Lodge ▾

### OPINION

MEMORANDUM ORDER

Defendant Brighton Collectibles has filed this Motion to Dismiss or Stay Plaintiff Coldwater Creek Inc. ▾'s action seeking Declaratory Judgment. Plaintiff opposes the motion. The motion is now ripe. Having fully reviewed the record, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument.

### I. Factual Background

On August 23, 2006, counsel for the Defendant sent a letter **[\*2]** to Plaintiff, accusing Plaintiff of infringing Defendant's copyrights and trade dress. In the letter, Defendant stated, "[i]f we do not hear from you by the close of business next Friday, August 18, 2006 that you will comply with our demands, we have been instructed to file suit against Coldwater Creek for copyright infringement, trade dress infringement, false designation of origin and unfair competition..." [1] (Docket 14, Exhibit A). On August 31, 2006, Plaintiff's counsel phoned Defendant's counsel to clarify Defendant's intentions, and to ask for additional time to address the matter. Defendant agreed to give Plaintiff until September 14, 2006 to respond

to the letter.

**FOOTNOTES**

1 The parties have agreed that the date "Friday, August 18, 2006" was written in error. The letter was dated, sent, and received on August 23, 2006. Thus, "next Friday" would actually refer to September 1, 2006. While Defendant claims it was a simple typographical error, Plaintiff has asserted this error in date gave Plaintiff reason to doubt Defendant's threats of litigation were legitimate and immediately impending.

On September 7, 2006, Plaintiff filed an action in this Court seeking a declaration of non-infringement [*3] of Defendant's copyrights, a declaration of non-infringement of Defendant's trade dress, a declaration of no false designation of origin, and a declaration of no unfair competition. On September 12, 2006, Defendant filed suit against Plaintiff in the Southern District of California alleging copyright infringement, trade dress infringement, false designation of origin, common law unfair competition, and statutory unfair competition. On September 14, 2006, counsel for the Plaintiff sent a letter to counsel for the Defendant stating: "the threat of imminent litigation contained in your letter requires that Coldwater Creek respond proactively to protect its legitimate business interests. Accordingly, Coldwater Creek has initiated a lawsuit seeking declaratory relief..." (Docket 14, Exhibit B). Plaintiff then filed a motion to dismiss, stay, or transfer the California action to the District of Idaho, on October 4, 2006, based on the first-filed rule and 28 U.S.C. § 1404. On October 24, 2006, Defendant filed this Motion to Dismiss or Stay Plaintiff's Declaratory Judgment action.

## II. Standard of Review for Motion to Dismiss a Declaratory Judgment Action

Defendant has filed a Motion to Dismiss [*4] Plaintiff's action seeking Declaratory Judgment. In support of their respective positions, Plaintiff and Defendant have each submitted memoranda, affidavits and other relevant evidence.

HN1 Under the Declaratory Judgment Act, a court may declare the rights and other legal relations of a party. 28 U.S.C. § 2201 (1993). The Act confers on federal courts unique and substantial discretion in determining whether to declare the rights of litigants or to decline to enter a declaratory judgment. *Wilton v. Seven Falls Co., 515 U.S. 277, 286-87, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995)*. A court, within its discretion, should declare the parties' rights and obligations when the judgment will (1) clarify or settle the legal relations at issue, and (2) terminate or afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Central Montana Elec. Power Co-op., Inc. v. Administrator of Bonneville Power Admin., 840 F.2d 1472 (9th Cir. 1988)*. The purpose of the Act is to relieve potential defendants from the threat of, "impending litigation which a harassing adversary might brandish, while initiating a suit at his leisure - or never" *Societe de Conditionnement, 655 F.2d 938, 943 (9th Cir. 1981)*.

HN2 A Court [*5] should award declaratory relief only in "a case of actual controversy." 28 U.S.C. § 2201. To establish that a particular declaratory action presents an actual case or controversy, a party is required to show, under all the circumstances of the case, there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1990)*; *Societe de Conditionnement, 655 F. 2d at 943*. However, courts differ on how immediate, or distant, a controversy should be to warrant declaratory relief.

In the instant case, while neither party contends Plaintiff's action lacks an actual case or controversy, Defendant argues Plaintiff engaged in a race to the courthouse in an attempt to

secure the forum of its choice. Defendant argues this was motivated by Plaintiff's anticipation of Defendant's imminent infringement suit, and that, therefore, the court should decline to hear Plaintiff's Declaratory Judgment action. In response, Plaintiff argues the instant action was not filed in anticipation of a suit by Defendant, but more **[*6]** as a "reasonable apprehension" of suit, and that, therefore, the Court should use its discretion to hear Plaintiff's first-filed suit. (Docket 14, p. 5).

*HN3*The first to file rule is "'a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.'" *Xoxide, Inc. v. Ford Motor Co.,* 448 F.Supp.2d 1188 (C.D. Cal. 2006) (citing *Pacesetter Sys., Inc. V. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982). The first to file rule exists to promote efficiency and should not be disregarded lightly. *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622 (9th Cir. 1991) (citing *Church of Scientology v. United States Dep't of the Army,* 611 F. 2d 738, 750 (9th Cir. 1979). However, there are exceptions to the first to file rule. A court may, in its discretion, depart from the first to file rule, when the filing of the first suit evidences bad faith, anticipatory suit, and/or forum shopping. *Alltrade,* 946 F.2d at 628. See also *Xoxide,* 448 F.Supp 2d at 1192 (citing ***Inherent.com v. Martindale-Hubbell, 420 F.Supp.2d 1093, 1097 (N.D. Cal. 2006).*** Plaintiff **[*7]** sites to *Alltrade* for the corollary proposition that a District Court also has discretion to allow the first-filed action to proceed. 946 F.2d at 622.

*HN4*The Ninth Circuit has not given explicit guidance as to what should be deemed "anticipatory," and therefore might warrant a departure from the first to file rule, but has left this to the discretion of the District Courts. Defendant points to cases decided by courts within the Ninth Circuit in which declaratory judgment actions have been found to be anticipatory and therefore warranting dismissal. In *Xoxide,* *HN5*the court found an action was anticipatory and should be dismissed, "when the 'plaintiff in a first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent.'" 448 F.Supp 2d at 1192 (citing *Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.,* 179 F.R.D. 264, 271 (C.D. Cal. 1998). However, such circumstances should be distinguished from "[v]eiled threats of legal action." *Guthy-Renker,* 179 F.R.D. at 271.

*HN6*Other Circuits have explicitly ruled a court should decline to hear declaratory judgment cases when an action constitutes forum shopping. Defendant points to the Seventh Circuit **[*8]** case *Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* in which the court upheld a District Court's decision not to hear a party's declaratory judgment action, where the action was filed in response to a letter informing the party of an intention to file suit. 819 F.2d 746, 749 (7th Cir. 1987). The court held: "Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Id. at 749.* A similar set of facts exists in the instant case. On August 23, 2006, Defendant sent a cease and desist letter threatening to file suit against Plaintiff if Defendant's demands were not met; Plaintiff responded by requesting more time, and then filing this action for declaratory relief on September 7, 2006. Five days later, Defendant filed an infringement suit against Plaintiff in the Southern District of California.

Plaintiff argues its declaratory judgment action is not anticipatory and the court should use its discretion to hear the case. Plaintiff references *Guthy-Renker* to support its proposition that the letter sent by Defendant to Plaintiff did not provide, "specific, concrete indications **[*9]** that a suit by the defendant was imminent." 179 F.R.D. at 270. However, the instant case must be distinguished from *Guthy-Renker,* in which the court found a letter "neither provided nor intended to provide Plaintiff with a specific, concrete indication of imminent suit," because the party neither threatened suit in the letter, nor had "'any intention of bringing about additional suits against other competitors.'" *Id. at 271.* In contrast, in the

instant case, the letter sent by Defendant to Plaintiff on August 23, 2006, explicitly threatened "to file suit against Coldwater Creek...." Further, in Plaintiff's September 14, 2006 letter to Defendant, Plaintiff stated "the threat of imminent litigation contained in your letter requires that Coldwater Creek respond proactively to protect its legitimate business interests," indicating Plaintiff not only considered Defendant's letter to be a specific threat of imminent suit, but was motivated by the threat to file this declaratory judgment action.

Plaintiff compares the actions of the parties in the instant case to those of the parties in Royal Queentex Enterprises v. Sara Lee Corp., 2000 U.S. Dist. LEXIS 10139 in which the court held a cease and desist letter sent by the **[*10]** defendant to the plaintiff, "constituted specific, concrete indications of a legal dispute, but not specific, concrete indication that suit was imminent..." in a motion to transfer venue. No. C-99-4787 MJJ, 2000 WL 246599 at *5 (N.D.Cal. March 1, 2000). The letter in question in Royal Queentex stated, "'[w]e are directing this correspondence in the hope that this matter may be resolved amicably,'" but that the defendant would "'forego legal action to enforce its rights only if'" it received the requested assurances from the plaintiff. Id. The court held the language of this letter threatened only "further legal action" generally. 2000 U.S. Dist. LEXIS10139 at *5, [WL] at *2. In contrast, in the instant case, the letter sent by Defendant to Plaintiff specifically threatened an imminent lawsuit, by stating, "we have been instructed to file suit against Coldwater Creek" if the demands set forth in the letter were not met. (Docket 14, Exhibit A). While the Court recognizes the letter in Royal Queentex is similar to the letter in this case, there is an important distinction between the two in that the letter in this case is a specific, concrete indication that a suit was imminent absent a response by Plaintiff, not just a **[*11]** threat of possible future legal action.

Finally, Plaintiff points to patent law cases from the Federal Circuit Court, emphasizing a number of factors to be considered when determining whether to hear a declaratory judgment action, and expressing that anticipatory filing, in and of itself, is not dispositive. See Electronics For Imaging, Inc. v. Coyle, 394 F.3d 1341 (Fed. Cir. 2005); Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993). However, this Court respectfully declines to consider such precedent over that set by Courts within the Ninth Circuit and other Circuit Courts, because the Federal Circuit decisions relate to the unique circumstances surrounding patent law and the need for national uniformity in patent practice.

### III. Plaintiff's Declaratory Judgment Suit is Anticipatory and Warrants Dismissal

This Court, employing its discretion, declines to hear Plaintiff's action for Declaratory Judgment. The Court finds the action was filed in anticipation of Defendant's impending infringement action, thus giving the appearance of forum shopping. The August 26, 2006 letter from Defendant to Plaintiff offered a specific, concrete indication that a suit was imminent. This is **[*12]** supported not only by the language included in Defendant's letter, but also by Plaintiff's September 14, 2006 letter in response, identifying Defendant's threat of imminent litigation and Plaintiff's desired response of filing this action. While the Court notes the importance of adhering to the first to file rule, in this case, it recognizes an exception, and is within its discretion to decline to hear Plaintiff's action.

### ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Docket No. 12) is **GRANTED.**

DATED: **July 27, 2007**

Honorable Edward J. Lodge

U. S. District Judge

## JUDGMENT

Based upon this Court's Memorandum Order, dated July 27, 2007, and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff take nothing from the Defendant and this action is **DISMISSED IN ITS ENTIRETY.**

DATED: **July 27, 2007**

Honorable Edward J. Lodge

U. S. District Judge

Service: **Get by LEXSEE®**
Citation: **2007 U.S. Dist. LEXIS 54780**
View: Full
Date/Time: Friday, May 9, 2008 - 3:44 PM EDT

* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🆀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
♦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
🛈 - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**EXHIBIT 2**

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27257          Page 1 of 7

Case 3:08-cv-00529-WQH-BLM    Document 9-4    Filed 05/12/2008    Page 12 of 31

**LexisNexis**® *Total Research System*                    Switch Client | Preferences | Sign Off | ? Help

Search \ Research Tasks \ Get a Document \ *Shepard's*® \ Alerts \ Total Litigator \ Transactional Advisor \ Cour

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 27257**

## 2003 U.S. Dist. LEXIS 27257, *

M.D. BEAUTY, INC. AND BIOCEUTIX, INC., Plaintiffs, v. DENNIS F. GROSS, M.D., P.C.,
DENNIS GROSS, M.D., L.L.P. AND DENNIS F. GROSS, M.D. d/b/a M.D. SKINCARE
Defendants.

### No. C03-3082 SBA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2003 U.S. Dist. LEXIS 27257

October 27, 2003, Decided
October 27, 2003, Filed

Judge Profile **($)**
View a summary by nature of suit of the civil cases heard by this judge, excerpted from the
CourtLink Judicial Strategic Profile.

**CORE TERMS:** anticipatory, apprehension, imminent, declaratory, demand letter,
trademark, shopping, concrete, venue, cease, deadline, declaratory action, personal
jurisdiction, desist, accommodation, formative, ended, declaratory relief, declaratory
judgment, hear, principal place of business, entity, skin, own action, infringement,
prerequisite, disregarded, courthouse, lightly, wholly owned

**COUNSEL:** [*1] For MD Beauty, Inc., Bioceutix, Inc., Plaintiffs: Michelle J. Hirth, Michelle
D. Kahn, Michelle MacKenzie, Sheppard Mullin Richter & Hampton LLP, San Francisco, CA;
Avital Elad, Sheppard Mullin Richter & Hampton, San Francisco, CA.

For Medical Doctor Dennis F. Gross doing business as M.D. Skincare, Dennis Gross, M.D.,
L.L.P., Dennis F. Gross, M.D., P.C., Defendants: Neil A. Smith, Howard Rice Nemerovski
Canady Falk & Rab, San Francisco, CA; Sarah Narvaez King, Howard Rice Nemerovski, et al,
San Francisco, CA.

**JUDGES:** Saundra Brown Armstrong, United States District Judge.

**OPINION BY:** Saundra Brown Armstrong

**OPINION**

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [Docket No. 20]

This matter comes before the Court on Defendants' Motion to Dismiss, or, in the Alternative,
To Transfer Venue [Docket No. 20]. Having read the papers submitted and being fully
informed, the Court GRANTS Defendants' Motion to Dismiss.

### BACKGROUND

#### A. The Parties

#### 1. Dr. Gross and the Related Entities

Dr. Dennis F. Gross is a practicing dermatologist in New York City. He has two offices located in the State of New York. He does not maintain any offices in California. Dr. Gross, doing business **[*2]** as M.D. Skincare, has been in the business of formulating, selling and marketing skin care products under the trademarks M.D. SKINCARE and M.D. SKIN CARE.

Dennis F. Gross, M.D., P.C. is a corporation formed to act as the leaseholder for Dr. Gross's dermatology office in New York City ("Gross P.C."). (Gross Supp. Decl. P 3.) It conducts no other business.

Dennis Gross, M.D., L.L.P. is a partnership that runs Dr. Gross's dermatology practice in New York ("Gross L.L.P."). (Gross Supp. Decl. P 4.) These entities will be referred to individually and collectively as "Dr. Gross."

#### 2. M.D. Beauty

M.D. Beauty, Inc. ("M.D. Beauty") is a Delaware corporation with a principal place of business in San Francisco. (M.D. Beauty Compl. P 1.) Bioceutix, Inc. ("Bioceutix") is a Delaware corporation with a principal place of business in San Francisco, California. (M.D. Beauty Compl. P 2.) Bioceutix is a wholly owned subsidiary of M.D. Beauty. (M.D. Beauty Compl. P 3.)

Bioceutix offers a line of skin care products under the marks M.D. FORMULATIONS, M.D. FORMULATIONS AND DESIGN, M.D. FORMULATIONS (stylized) and M.D. FORMULATIONS VIT-A-PLUS (the "M.D. Marks" or the "Marks"). (M.D. Beauty Compl. **[*3]** P 8.) Bioceutix offers goods bearing the Marks throughout the United States. (M.D. Beauty Compl. P 14.) Bioceutix has extensively advertised and promoted the Marks and believes that through this "widespread" use, it has developed recognition and goodwill. (M.D. Compl. PP 14-15.)

Bare Escentuals ⌄is a California corporation with its principal place of business in California. (Blodgett Aff. P 6.) It is wholly owned by M.D. Beauty and is a separate corporate entity from Bioceutix. (Blodgett Aff. P 5.) It sells its products through retail stores. (Blodgett Aff. PP 6, 8.) The President of Bare Escentuals ⌄has appeared on the Quality Value Channel, a home shopping channel, and sold products as a result of those appearances. (Blodgett Aff. P 10.) It also provides its products to an Illinois-based wholesaler who resells the products to spas and salons. (Blodgett Aff. P 9.)

M.D. Beauty and Bioceutix will be referred to collectively as "M.D. Beauty."

#### B. The Cease and Desist Communications

On March 17, 2003 Bare Escentuals ⌄caused to be sent a cease and desist letter to M.D. Skincare, which is the company that Dr. Gross does business as. The letter was addressed to the "president" **[*4]** but did not identify who the president was. In the letter, Bare Escentuals ⌄asserted rights in the Marks, claimed that the Marks were famous, and stated that M.D. Skincare's own use of marks incorporating the M.D. formative "infringes the Marks in violation of federal law and the law of the State of California." (Elad Decl. Exh. A at 2.) Bare Escentuals ⌄also stated that it had a number of remedies available to it, including "injunctive relief, an award of profits earned, an award of damages . . . costs and attorney's fees." Bare Escentuals ⌄asserted, however that it "would prefer to resolve this matter

amically" and requested written assurances within fourteen days of the date of the letter. (Id.)

On April 8, 2003, attorneys on behalf of Dr. Gross d/b/a M.D. Skincare ("Dr. Gross") sent a response to Bare Escentuals. ▾ In the letter, Dr. Gross stated that he was "perplexed" by Bare Escentuals ▾'s demand letter because he believed that the Marks were owned by Allergan and that he had worked out a prior accommodation with Allergan. (Elad Decl., Exh. B at 1.) Dr. Gross also requested that Bare Escentuals ▾explain what rights it owned in the Marks.

In response to Dr. Gross's letter, Bare Escentuals ▾ [*5] sent a letter dated April 24, 2003. In this letter, Bare Escentuals ▾requested that Dr. Gross provide evidence of Allergan's accommodation. Bare Escentuals ▾also explained that Bioceutix, an affiliated company, obtained rights in the trademarks through an assignment from Allergan. Bare Escentuals ▾ reiterated its demand that Dr. Gross provide written assurances that he would cease all use of the M.D. formative marks within seven days of the date of the letter. The letter ended with "If we do not hear from [you] in this regard within the specified time period, Bare Escentuals ▾will have no choice but to pursue the alternatives available to it." (Elad Decl., Exh. C at 2.)

Dr. Gross did not respond to this letter. Instead, on May 1, 2003, Dr. Gross filed a complaint in the Southern District of New York for declaratory relief against Bare Escentuals ▾and Bioceutix (the "New York Action"). (Elad Decl., Exh. D.)

### C. The Pending Lawsuits

#### 1. The New York Action

In his Complaint, Dr. Gross seeks declaratory judgment that his use of the M.D. formative does not infringe the Marks. He also alleges facts regarding the accommodation with Allergan. (NY Compl. P 6.) Finally, he alleges [*6] the affirmative defenses of laches and acquiescence.

More than two months later, on July 7, 2003, Bare Escentuals ▾and Bioceutix filed a 31-page Motion to Dismiss Bare Escentuals ▾for Misjoinder, Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss or Transfer for Improper Venue, Motion to Transfer Venue Under Section 1404(a) and a Motion to Stay Declaratory Relief Action. (Hirth Decl., Exh. H.)

#### 2. The California Complaint

Exactly two months after Dr. Gross filed the New York Complaint, M.D. Beauty filed a complaint for trademark infringement in the Northern District of California (the "California Action"). Even though Bare Escentuals ▾had sent the original demand letters, it did not join the California Action.

In response to the California Action, Dr. Gross has filed a motion to dismiss based on the first-to-file rule or lack of personal jurisdiction, or in the alternative transfer venue.

### *FIRST-TO-FILE RULE*

#### A. Legal Discussion

The "first-to-file rule" is a well-established rule "which allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court [.]" Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991). [*7] Premised upon the doctrine of federal comity, the rule "was developed to 'serve[] the

purpose of promoting efficiency well and should not be disregarded lightly.'" Id. at 625 (quoting *Church of Scientology of California v. United States Dept. of the Army*, 611 F.2d 738, 750 (9th Cir.1979)); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The rule "may be invoked 'when a complaint involving the same parties and issues has already been filed in another district.'" *Alltrade*, 946 F.2d at 625 (quoting *Pacesetter Systems*, 678 F.2d at 95). The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems*, 678 F.2d at 95.

The Ninth Circuit has identified three special circumstances in which a court may decline to apply the first-to-file rule: when the first-filed suit was filed in bad faith, was anticipatory, or was forum shopping. *Alltrade*, 946 F.2d at 625. Thus, some courts have chosen not to apply the first-to-file rule when **[*8]** the first-filed action is one for declaratory relief. *See, e.g., Alaris Medical Systems, Inc. v. Filtertek, Inc.*, 2001 U.S. Dist. LEXIS 24976, at *5-6 (S.D.Cal. Dec. 19, 2001). *See also, Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2nd Cir. 1988). In these cases, the courts found that the declaratory action was anticipatory and plaintiff was forum shopping. These courts somewhat melded the anticipatory exception with the forum shopping exception -- plaintiff anticipated an immediate litigation and raced to the courthouse to secure his choice of forum. *See e.g., Alaris Medical Systems*, 2001 U.S. Dist. LEXIS 24976, at *5-6; *Factors*, 579 F.2d at 219.

At the same time, one of the key purposes of the Declaratory Judgment Act ("DJA") is to "alleviate the necessity of waiting indefinitely for a [party] to file an infringement action." **Guthy-Renker Fitness, L.L.C. v. Icon Health, 179 F.R.D. 264, 272 (C.D.Cal. 1998)**. It allows a party in *reasonable apprehension* of suit to file a declaratory action. *Id.* In fact, if a declaratory plaintiff is not in reasonable apprehension of **[*9]** a suit, then a court may not exercise jurisdiction because there is no case or controversy. 28 U.S.C. § 2201. *See also* **Guthy-Renker Fitness, 179 F.R.D. at 278**.

This Court observes that, construed broadly, the first-to-file exception conflicts with the jurisdictional prerequisite of "reasonable apprehension." For a court to hear a claim for declaratory relief, the declaratory plaintiff must be in reasonable apprehension of a suit. If there is a reasonable apprehension of a suit, however, then the declaratory action may be perceived as anticipatory. Thus, a court must balance the competing interests of the anticipatory exception to the first-to-file rule with the reasonable apprehension prerequisite of the DJA. In weighing this balance, courts in the Second and Ninth circuits have focused on the reasonableness of the declaratory plaintiff's apprehension. *See, e.g.,* **Guthy-Renker Fitness, 179 F.R.D. at 271** (finding cease and desist letters were not a specific, concrete indication of imminent suit); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (SDNY 1994) ("A party's reasonable **[*10]** apprehension of a legal controversy . . . . [satisfies] the requirement of a justiciable controversy without rising to the level of a direct threat of imminent litigation."); *British Telecom. v. McDonnell Douglas Corp.*, 1993 U.S. Dist. LEXIS 6345, 1993 WL 149860, *3 (N.D.Cal. May 3, 1993).

The Court adopts this approach because it prevents a declaratory defendant from abusing the first-to-file rule to engage in his own forum shopping. Otherwise, "each time a party sought declaratory judgment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." *800-Flowers*, 860 F.Supp at 132. Accordingly, "[a] suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent." **Guthy-Renker Fitness, 179 F.R.D. at 278**.

### B. Application

Dr. Gross filed the New York Action first. M.D. Beauty does not deny this. Nor does M.D.

Beauty argue that the parties or issues are sufficiently different that the first-to-file rule **[*11]** is not applicable. [1] Instead, it argues that Dr. Gross's suit was anticipatory. [2] As such, the Court has the discretion not to apply the first-to-file rule. For this Court to find that Dr. Gross's suit was anticipatory, it must find that Dr. Gross received concrete indications that a suit by M.D. Beauty was imminent. The two demand letters Dr. Gross received were not concrete.

## FOOTNOTES

[1] The Court notes that even though the New York Action involves M.D. Beauty and Bare Escentuals, ⌄ but not Bioceutix, the parties are related to Bioceutix. The issues in both cases are identical-whether Dr. Gross has infringed the Marks.

[2] By characterizing Dr. Gross's action as "anticipatory" M.D. Beauty essentially concedes that there is a case or controversy between the parties. Dr. Gross's action cannot be anticipatory unless there was at the very least a reasonable apprehension of litigation, which in fact manifested itself in M.D. Beauty's filing suit in California. The Court also notes that in M.D. Beauty's moving papers in the New York Action, M.D. Beauty does not deny that there is a case or controversy.

**[*12]** To begin with, the demand letters were not sufficiently concrete to even identify who owned the trademarks. The first demand letter was sent on behalf of Bare Escentuals, ⌄ even though the Marks are purportedly owned by Bioceutix. (Elad Decl., Exh. A.) Apparently, counsel for M.D. Beauty "inadvertently" attributed the trademark rights to Bare Escentuals. ⌄ (Elad Decl. P 2.) Yet the second letter did not adequately clarify the matter. Although it identified Bioceutix as the owner, the demands still came from Bare Escentuals. ⌄ (Id.) For example, the second letter ended by stating, "If we do not hear from [you] in this regard within the specified time, *Bare Escentuals* ⌄ will have no choice but to pursue alternatives available to it." (Elad Decl., Exh. C at 2.) (emphasis added). It is difficult to surmise that M.D. Beauty's threats of litigation were so imminent when it did not bother to properly identify the trademark owner, nor clarify from whom the cease and desist demands came.

Turning to the letters and communications between the parties, it appears that the threat of litigation was reasonable, but not imminent. While both demand letters used strong language, neither threatened imminent **[*13]** litigation. The first demand letter stated that "Bare Escentuals ⌄would prefer to resolve this matter amicably." (Elad Decl., Exh. A at 2.) It ended with an invitation to discuss the matter: "Should you wish to discuss the foregoing prior to the expiration of the response term, please do not hesitate to contact me or my colleague . . ." (Elad Decl., Exh. A at 2.) The letter gave Dr. Gross fourteen days from the date of the letter to respond. The letter was dated March 17, 2003. (Elad Decl., Exh. A at 1.) Accordingly, Dr. Gross's response was due on or before March 31, 2003. Dr. Gross did not respond, however, until April 8, 2003, 22 days after the date of the first letter. (Elad Decl., Exh. B at 1.) In other words, Dr. Gross's response was eight days beyond the deadline.

The second demand letter strongly reiterated M.D. Beauty's position that Dr. Gross's use of the M.D. formative marks infringed the Marks. Like the first letter, it imposed a deadline by which Dr. Gross was to respond. (Elad Decl., Exh. C at 2.) Whether the parties negotiated to extend the deadline set in the first letter, is unclear. Either way, however, the fact that Bare Escentuals ⌄permitted (either expressly or **[*14]** impliedly) Dr. Gross to respond late to the first letter demonstrates that despite the express language of the second letter, Bare Escentuals ⌄(or M.D. Beauty) would not necessarily hold Dr. Gross to that deadline. The second letter stated that if Dr. Gross did not respond by the deadline, "Bare Escentuals ⌄will have no choice but to pursue the alternatives available to it." The plural form of "alternatives" suggests that Bare Escentuals ⌄(or M.D. Beauty) had and was considering

more than one means of enforcing its rights. Litigation was ostensibly one, but not the only, option. While this language certainly creates a reasonable apprehension of litigation, it does not render litigation imminent. The second letter also requested further information from Dr. Gross regarding his accommodation with the predecessor-in-interest of the trademarks, Allergan. It ended with, "[s]hould you wish to discuss the foregoing prior to the expiration of the response term, please do not hesitate to contact me . . ." (Elad Decl., Exh. C at 3.)

Based on the parties' correspondence and the timing of Dr. Gross's response to the first letter, it is not clear that Dr. Gross knew whether and when M.D. Beauty [*15] would file suit. This is bolstered by the fact that M.D. Beauty waited two full months. M.D. Beauty's own delay supports a finding that Dr. Gross did not file his suit as an anticipatory race to the courthouse. Equally as noteworthy is that M.D. Beauty did not move to dismiss or transfer the New York Action until after it filed its own action before this Court. Cf. British Telecom., 1993 U.S. Dist. LEXIS 6345, 1993 WL 149860, at *3 (finding that first-to-file rule applied where the declaratory defendant filed its own suit in California two months after the first action and where declaratory defendant did not move to dismiss or transfer the declaratory action until after filing its own action).

### PERSONAL JURISDICTION PROBLEMS

M.D. Beauty further argues that the first-to-file rule should not apply because the court in the New York Action cannot assert personal jurisdiction over it. This Court has serious doubts about the merits of this claim. By M.D. Beauty's own admission, it has promoted its products on QVC, a national television station. Moreover, Dr. Gross has submitted evidence that M.D. Beauty sells its products in at least 66 spas in the Southern District of New York (Maldonado [*16] Decl. PP 2-6). M.D. Beauty also operates an active retail website. (Maldonado Decl. P 7.)

In any event, considering the nature of this dispute and the superior experience the Southern District of New York has in deciding its own jurisdiction, "it would be presumptuous for this [C]ourt to decline to apply the first-to-file rule when the court whose jurisdiction is being challenged has not had an opportunity to fully consider the issue." British Telecom 1993 U.S. Dist. LEXIS 6345, 1993 WL 149860, at *4.

### CONCLUSION

Ultimately, the decision to apply the first-to-file rule rests within the Court's discretion. Mindful of the Ninth Circuit's mandate that the first-to-file rule "should not be disregarded lightly," Church of Scientology, 611 F.2d at 750, the Court chooses to apply it. Because the first-to-file rule applies, the Court does not reach Dr. Gross's alternative grounds for dismissal or transfer of venue.

For the foregoing reasons, Dr. Gross's Motion to Dismiss [Docket No. 20] is GRANTED

IT IS FURTHER ORDERED THAT all remaining dates in the action are VACATED. The clerk shall terminate the file.

IT IS SO ORDERED.

Dated: October 27, 2003

/s/ Saundra Brown [*17] Armstrong

United States District Judge

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 27257                Page 7 of 7

Case 3:08-cv-00529-WQH-BLM    Document 9-4    Filed 05/12/2008    Page 18 of 31

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 27257**
View: **Full**
Date/Time: Wednesday, May 7, 2008 - 1:52 PM EDT

\* Signal Legend:

● - Warning: Negative treatment is indicated

[Q] - Questioned: Validity questioned by citing refs

△ - Caution: Possible negative treatment

◆ - Positive treatment is indicated

Ⓐ - Citing Refs. With Analysis Available

ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

● **LexisNexis®**    About LexisNexis  |  Terms & Conditions  |  Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

**EXHIBIT 3**

LexisNexis® *Total Research System*                    Switch Client | Preferences | Sign Off | ? Help

Search \ Research Tasks \ Get a Document \ *Shepard's®* \ Alerts \ Total Litigator \ Transactional Advisor \ Cour

Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 10139**

*2000 U.S. Dist. LEXIS 10139, ***

ROYAL QUEENTEX ENTERPRISES INC., Plaintiff, v. SARA LEE CORPORATION, Defendant.

No. C 99-4787 MJJ

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2000 U.S. Dist. LEXIS 10139

March 1, 2000, Decided
March 1, 2000, Filed

**DISPOSITION:** **[\*1]** Motion to transfer venue DENIED.

Judge Profile **($)**
View a summary by nature of suit of the civil cases heard by this judge, excerpted from the
CourtLink Judicial Strategic Profile.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to transfer venue
pursuant to 28 U.S.C.S. § 1404(a) in plaintiff corporation's declaratory judgment action to
establish its right to use a certain mark similar to defendant's trademark.

**OVERVIEW:** Plaintiff corporation brought a declaratory judgment action against defendant
corporation seeking to establish its right to use a certain mark similar to defendant's
trademark. Defendant brought an action against plaintiff in a different forum claiming
trademark infringement. Defendant filed a motion to transfer venue pursuant to 28
U.S.C.S. § 1404(a), claiming that plaintiff engaged in forum shopping, and filed its action
in anticipation of defendant's action. The court denied defendant's motion to transfer,
holding that defendant failed to meet its burden under 28 U.S.C.S. § 1404 of establishing
that the balance of inconveniences weighed more heavily in favor of transfer to its
trademark infringement action in a different forum.

**OUTCOME:** Motion to transfer denied because defendant corporation failed to meet its
burden of establishing that the balance of inconveniences weighed more heavily in favor of
transfer to its trademark infringement action against plaintiff corporation in a different
forum.

**CORE TERMS:** declaratory judgment, venue, convenience, weigh, inconvenience,
trademark, travel, choice of forum, infringement, anticipation, hosiery, personal
jurisdiction, imminent, inconvenienced, anticipatory, declaratory, congestion, assurances,
dilution, concrete, desist, cease, moving party, jurisdiction to hear, consolidation,
additionally, inconvenient, discontinue, familiarity, courthouse

**LEXISNEXIS® HEADNOTES**                                                    ⊟ **Hide**

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties
Civil Procedure > Venue > Motions to Transfer > Interests of Justice

*HN1* ⤓ Motions to transfer venue are governed by 28 U.S.C.S. § 1404(a), which provides
that for the convenience of the parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district or division where
the action might have been brought. The purpose of § 1404(a) is to prevent the
waste of time energy and money and to protect litigants, witnesses, and the
public against unnecessary inconvenience and expense. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN2* ⤓ Under 28 U.S.C.S. § 1404(a), the moving party has the burden of showing that
the balance of conveniences weighs heavily in favor of the transfer in order to
overcome the strong presumption in favor of the plaintiff's choice of
forum. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties
Civil Procedure > Venue > Motions to Transfer > Interests of Justice

*HN3* ⤓ In order to support a motion to transfer venue, the moving party must show that
the forum to which they seek transfer is a forum in which the action originally
might have been brought. In addition, the transfer must be for the convenience of
the parties and witnesses and in the interests of justice. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Motions to Transfer > Choice of Forum
Civil Procedure > Venue > Motions to Transfer > Convenience of Parties
Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses

*HN4* ⤓ Several considerations that can be used in weighing the factors supporting a
motion to transfer venue include: (1) plaintiff's choice of forum, (2) convenience
of the parties, (3) convenience of the witnesses, (4) ease of access to the
evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of
consolidation of other claims, (7) any local interest in the controversy, and (8) the
relative court congestion and time of trial in each forum. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions >
General Overview
Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers

*HN5* ⤓ Transfer under 28 U.S.C.S. § 1404(a) is limited to courts where the action might
have been brought. The transferee court must have had complete personal
jurisdiction over defendants, subject matter jurisdiction over the claim, and proper
venue had the claim originally been brought in that court. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Jurisdiction > General Overview
Civil Procedure > Venue > Corporations
Civil Procedure > Venue > Multiparty Litigation

*HN6* ⤓ Venue is proper pursuant to 28 U.S.C.S. § 1391(c) for corporations in any district
in which a court has proper personal jurisdiction over that

corporation.   <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Venue</u> > <u>Federal Venue Transfers</u> > <u>General Overview</u> 🔖
<u>Civil Procedure</u> > <u>Venue</u> > <u>Motions to Transfer</u> > <u>Choice of Forum</u> 🔖
*HN7* ✚ In motions to transfer venue, there is a strong presumption in favor of the
plaintiff's choice of forum. The defendant bears the burden of overcoming this
presumption to demonstrate that the balance of inconveniences substantially
weighs in favor of transfer.   <u>More Like This Headnote</u>  |  *Shepardize: Restrict By Headnote*

<u>Civil Procedure</u> > <u>Venue</u> > <u>Federal Venue Transfers</u> > <u>General Overview</u> 🔖
<u>Civil Procedure</u> > <u>Declaratory Judgment Actions</u> > <u>State Judgments</u> > <u>Factors</u> 🔖
*HN8* ✚ While plaintiff's choice of forum is to be given great weight, that choice is not the
final word. Circumstances in which a plaintiff's chosen forum will be accorded little
deference include cases of anticipatory suits and forum shopping. The principle
disfavoring anticipatory lawsuits is especially strong where the first-filed suit is
one for a declaratory judgment. A proper factor to consider in dismissing a
declaratory judgment is whether the suit was filed in anticipation of another and
therefore was being used for the purpose of forum-shopping.   <u>More Like This Headnote</u>
|  *Shepardize: Restrict By Headnote*

<u>Civil Procedure</u> > <u>Justiciability</u> > <u>Case or Controversy Requirements</u> > <u>Adverse Legal Interests</u> 🔖
<u>Civil Procedure</u> > <u>Justiciability</u> > <u>Case or Controversy Requirements</u> > <u>Immediacy</u> 🔖
<u>Civil Procedure</u> > <u>Declaratory Judgment Actions</u> > <u>General Overview</u> 🔖
*HN9* ✚ Declaratory judgment actions are justiciable if there is a substantial controversy,
between parties having adverse legal interests, of sufficient immediacy and reality
to warrant the issuance of a declaratory judgment. In a trademark case, the
actual case or controversy test requires the plaintiff to establish: (1) that the
defendant's conduct created a real and reasonable apprehension of liability on the
part of the plaintiff, and (2) that the plaintiff engaged in a course of conduct which
has brought it into adversarial conflict with the defendant.   <u>More Like This Headnote</u>  |
*Shepardize: Restrict By Headnote*

<u>Civil Procedure</u> > <u>Jurisdiction</u> > <u>General Overview</u> 🔖
<u>Civil Procedure</u> > <u>Declaratory Judgment Actions</u> > <u>Federal Judgments</u> > <u>General Overview</u> 🔖
*HN10* ✚ The question is whether the district court would have jurisdiction to hear a
coercive action brought by the declaratory judgment
defendant.   <u>More Like This Headnote</u>  |  *Shepardize: Restrict By Headnote*

<u>Civil Procedure</u> > <u>Venue</u> > <u>Federal Venue Transfers</u> > <u>General Overview</u> 🔖
*HN11* ✚ A court may consider the relative means of the parties in deciding a transfer
motion.   <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Venue</u> > <u>Federal Venue Transfers</u> > <u>General Overview</u> 🔖
<u>Civil Procedure</u> > <u>Venue</u> > <u>Motions to Transfer</u> > <u>Convenience of Parties</u> 🔖
<u>Civil Procedure</u> > <u>Venue</u> > <u>Motions to Transfer</u> > <u>Convenience of Witnesses</u> 🔖
*HN12* ✚ One of the most important factors in determining whether to grant a motion to
transfer venue is the convenience of the witnesses. To demonstrate
inconvenience, the moving party should produce information regarding the
identity and location of the witnesses, the content of their testimony, and why
such testimony is relevant to the action. The court will consider not only the
number of witnesses located in the respective districts, but also the nature and
quality of their testimony. In balancing the convenience of the witnesses,
primary consideration is given to third party, as opposed to employee

witnesses. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔁
*HN13* ⊹ Where transfer of venue would merely shift the inconvenience from one party to another, it should not be granted. More Like This Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔁
*HN14* ⊹ Transfer is favored where it will allow consolidation with another pending action and conserve judicial resources. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Venue > Federal Venue Transfers > General Overview 🔁
*HN15* ⊹ Relative court congestion is at best, a minor factor in the 28 U.S.C.S. § 1404 calculus. Docket congestion is not given much weight in a 28 U.S.C.S. § 1404(a) consideration. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For ROYAL QUEENTEX ENTERPRISES, INC., Plaintiff: Shane Brun, Michael J. Bettinger, Preston Gates & Ellis LLP, San Francisco, CA.

For SARA LEE CORPORATION, defendant: Curtis E.A. Karnow, Sonnenschein Nath & Rosenthal, San Francisco, CA.

For SARA LEE CORPORATION, defendant: George L. Little, J. David Mayberry, B. Gordon Watkins, Kilpatrick Stockton, LLP, Winston-Salem, NC.

For SARA LEE CORPORATION, defendant: R. Todd Morgan, Kilpatrick Stockton LLP, Raleigh, NC.

For SARA LEE CORPORATION, Counter-claimant: Curtis E.A. Karnow, Sonnenschein Nath & Rosenthal, San Francisco, CA.

For SARA LEE CORPORATION, Counter-claimant: George L. Little, J. David Mayberry, B. Gordon Watkins, Kilpatrick Stockton, LLP, Winston-Salem, NC.

For SARA LEE CORPORATION, Counter-claimant: R. Todd Morgan, Kilpatrick Stockton LLP, Raleigh, NC.

For ROYAL QUEENTEX ENTERPRISES, INC., Counter-defendant: Shane Brun, Michael J. Bettinger, Preston Gates & Ellis LLP, San Francisco, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**


**ORDER DENYING MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Before this Court is the motion **[\*2]** of defendant Sara Lee Inc. ("Sara Lee") to transfer venue pursuant to 28 U.S.C. 1404(a). For the reasons outlined in this memorandum and

order, the motion is DENIED.

## FACTUAL BACKGROUND

This factual dispute between Royal Queentex Enterprises, Inc. ("Royal Queentex") and Sara Lee concerns the latter's allegation that Royal Queentex's "Leg Avenue" product mark infringes and dilutes Sara Lee's successful "L'EGGS" trademark. On October 29, 1999, Royal Queentex filed a declaratory relief action in this Court (hereinafter "the California action") to establish its right to use the "Leg Avenue" mark. On November 24, 1999, Sara Lee filed a complaint against Royal Queentex and two additional parties in the Middle District of North Carolina, alleging that Royal

Queentex engaged in trademark infringement and false designation of origin, federal and state trademark dilution, and unfair competition (hereinafter "the North Carolina action").

Sara Lee is a multinational corporation with operations in more than 40 countries. According to public information, Sara Lee generates more than $ 20 billion in annual revenue from five lines of businesses. One of them is branded [*3] apparel, among them the L'EGGS hosiery brand. Sara Lee's branded apparel products has annual sales of $ 2.5 billion. Sara Lee has sold $ 10 billion in L'EGGS brand product since 1969. Sara Lee Hosiery is based in Winston-Salem, North Carolina. [1]

### FOOTNOTES

1 Sara Lee is a Maryland corporation with its principal place of business in Chicago, Illinois.

Royal Queentex is a California corporation with its place of business in Los Angeles, California. Royal Queentex imports exotic lingerie from Taiwan and distributes it to wholesalers throughout the U.S. under the label "Leg Avenue." Royal Queentex has eight employees including Michael Tsai, who manages the business. Royal Queentex's sales in 1999 were approximately $ 6.6 million, with more than 30 percent occurring in California. North Carolina accounted for 3.6% percent of its 1999 sales.

On November 12, 1996 Royal Queentex filed an application with the United States Patent and Trademark Office ("PTO") to register the mark LEG AVENUE for use with its hosiery. The mark LEG [*4] AVENUE was published for opposition by the PTO on June 17, 1997. In October 1997, Sara Lee filed an opposition to registration of the LEG AVENUE mark. Royal Queentex did not respond to Sara Lee's opposition. [2] After waiting five months, the Trademark Trial and Appeals Board ("PTTB") entered default judgment in favor of Sara Lee and denied registration of Royal Queentex's LEG AVENUE mark based on Royal Queentex's apparent abandonment of the application.

### FOOTNOTES

2 Royal Queentex says it missed its filing deadline due to a procedural mix-up. However, according to PTTB correspondence, it appears Royal Queentex experienced difficulty with counsel. On June 10, 1998, the PTTB issued an order suspending proceedings in view of the withdrawal of Royal Queentex's counsel. The PTTB gave Royal Queentex time to either appoint new counsel or continue pro se. Additionally, The PTTB gave Royal Queentex thirty days to show why default judgment should not be entered due to their apparent loss of interest in the case. Royal Queentex never responded and default judgment was entered on August 19, 1998.

**[\*5]** On October 21, 1999, Sara Lee's outside counsel mailed a cease and desist letter to Queentex which read:

We are directing this correspondence in the hope that this matter may be resolved amicably. L'EGGS Products is willing to forego legal action to enforce its rights only if we receive prompt written assurances that Royal Queentex will immediately discontinue all us of any name containing the words "LEG" or "LEGS," or any colorable imitation thereof, including but not limited to use of the designation "LEG AVENUE," in connection with the sale of hosiery products of any type, including pantyhose, knee-highs, socks, tights, trouser socks, or other forms of legwear.

If we do not receive a response with these assurances within fourteen (14) days of the date of this letter, L'EGGS Products has authorized this firm to take further legal action necessary and appropriate to enforce its valuable trademark rights.

This letter was delivered to Royal Queentex on October 26, 1999.

Three days later, Royal Queentex filed the California action for declaratory relief without responding to Sara Lee's letter. Nearly four weeks after the California action was filed, Sara Lee filed the North **[\*6]** Carolina action for infringement and dilution. On December 8, 1999, Sara Lee answered here and concurrently filed this motion to transfer venue of the California action to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### I. Legal Standard

$^{HN1}$ Motions to transfer venue are governed by 28 U.S.C. § 1404(a) Section 1404(a) provides that for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where the action might have been brought. 28 U.S.C. § 1404(a) (1998). The purpose of section 1404(a) is to prevent the waste of 'time energy and money' and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. _Van Dusen v. Barrack_, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964) (quoting _Continental Grain Co. v. Barge FBL-585_, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)). $^{HN2}$ Under section 1404 (a), the moving party has the burden of showing that the balance of conveniences weighs heavily in favor of the transfer in order to **[\*7]** overcome the strong presumption in favor of the plaintiff's choice of forum. _See Decker Coal Co. v. Commonwealth Edison Co._, 805 F.2d 834, 843 (9th Cir. 1986); _Piper Aircraft Co. v. Reyno_, 454 U.S. 235, 255-56, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

$^{HN3}$ In order to support a motion to transfer venue, the moving party must show that the forum to which they seek transfer is a forum in which the action originally might have been brought. _See Hoffman v. Blaski_, 363 U.S. 335, 344, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960). In addition, the transfer must be for the convenience of the parties and witnesses and in the interests of justice. _See Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc._, 179 F.R.D. 264, 269 (C.D. Cal. 1998) (citing _Arley v. United Pac. Ins. Co._, 379 F.2d 183, 185 (9th Cir. 1969)). This Circuit set forth $^{HN4}$ several considerations that can be used in weighing these factors. These include: 1) plaintiff's choice of forum, 2) convenience of the parties, 3) convenience of the witnesses, 4) ease of access to the evidence, 5) familiarity of each forum with the applicable law, 6) feasibility **[\*8]** of consolidation of other claims, 7) any local interest in the controversy, and 8) the relative court congestion and time of trial in each forum. _See Decker Coal_, 805 F.2d at 843; _Linear Technology Corp. v. Analog Devices, Inc._,

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 10159
Case 3:08-cv-00529-WQH-BLM    Document 9-4    Filed 05/12/2008    Page 26 of 31
Page 7 of 12

1995 U.S. Dist. LEXIS 4548, 1995 WL 225672, *1 (N.D. Cal. 1995); _Teknekron Software Systems, Inc. v. Cornell University_, 1993 U.S. Dist. LEXIS 21337, 1993 WL 215024, *7 (N.D. Cal. 1993); _University of California v. Eli Lilly & Co._, 21 U.S.P.Q.2D (BNA) 1201, 1207 (N.D. Cal. 1991).

## II. Might Have Been Brought

$^{HN5}$Transfer under section 1404(a) is limited to courts where the action might have been brought. See _Hoffman_, 363 U.S. at 344; _A.J. Indus., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal._, 503 F.2d 384, 386 (9th Cir. 1974). The transferee court must have had complete personal jurisdiction over defendants, subject matter jurisdiction over the claim, and proper venue had the claim originally been brought in that court. See _Hoffman_, 363 U.S. at 343-44. Here, it is undisputed that Royal Queentex's California action could have been brought in the Middle District of North Carolina.

**[*9]** The Middle District of North Carolina has proper personal jurisdiction over Sara Lee because the L'EGGS Products division of Sara Lee is headquartered in Winston-Salem, North Carolina, and because Sara Lee conducts substantial business from that location. $^{HN6}$Venue is proper pursuant to 28 U.S.C. § 1391(c) for corporations in any district in which a court has proper personal jurisdiction over that corporation. Finally, this Court has proper subject matter jurisdiction over the claim based on diversity and because the claim exceeds $ 75,000. Therefore, since the action might have been brought in the Middle District of North Carolina, the Court now turns to a consideration of the convenience and justice factors at issue in this case.

## III. Convenience Factors

### A. Plaintiff's Choice of Forum

$^{HN7}$In motions to transfer venue, there is a strong presumption in favor of plaintiff's choice of forum. _Jarvis v. Marietta Corp._, 1999 U.S. Dist. LEXIS 12659, 1999 WL 638231 (N.D. Cal. 1999)(citing _Piper Aircraft_, 454 U.S. at 255). Therefore, on this Rule 1404(a) motion to transfer, Sara Lee bears the burden of overcoming this presumption to demonstrate that the balance **[*10]** of inconveniences substantially weighs in favor of transfer. See _Decker Coal v. Continental Edison_, 805 F.2d 834, 843 (9th Cir. 1986). $^{HN8}$While plaintiff's choice of forum is to be given great weight, that choice is not the final word. _Pacific Car and Foundry Co. v. Pence_, 403 F.2d 949, 954 (9th Cir. 1968). Circumstances in which a plaintiff's chosen forum will be accorded little deference include cases of anticipatory suits and forum shopping. See _Mission Ins. Co. v. Purina Fashions Corp._, 706 F.2d 599, 602 n. 3 (5th Cir. 1983). The principle disfavoring anticipatory lawsuits is especially strong where, as here, the first-filed suit is one for a declaratory judgment. "[A] proper factor to consider in dismissing a declaratory judgment is whether the suit was filed in anticipation of another and therefore was being used for the purpose of forum-shopping." _Patton Electric Co. v. Rampart Air, Inc._, 777 F. Supp. 704, 708 (N.D. Ind. 1991).

Sara Lee claims Royal Queentex engaged in forum shopping, and filed the California action in anticipation of the North Carolina action. For the reasons stated herein, the Court disagrees. **[*11]** Sara Lee argues that (1) either the letter to Royal Queentex did not raise a justiciable controversy, in which Royal Queentex would have no grounds for declaratory judgment action, or (2) the letter contained a specific threat of imminent suit by Sara Lee thereby making this action anticipatory.

Sara Lee's first argument misapplies and misinterprets the Declaratory Judgment Act. 28 U.S.C.A. § 2201. $^{HN9}$Declaratory judgment actions are justiciable if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941); *see also National Basketball Association v. SDC Basketball Club*, 815 F.2d 562, 565. "In a trademark case, the 'actual case or controversy' test requires the plaintiff to establish: (1) that the defendant's conduct created 'a real and reasonable apprehension of liability on the part of the plaintiff,' and (2) that the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the **[*12]** defendant." *See Windsurfing Intern. Inc. v. AMF Inc.*, 828 F.2d 755, 757-58 (Fed. Cir. 1989).

While this determination often requires some *ad hoc* factual navigation, this outcome appears to be quite clear in this case. "*HN10*⚓The question is whether the District Court would have jurisdiction to hear a coercive action brought by the declaratory judgment defendant." *Seattle Audubon Society v. Moseley*, 80 F.3d 1401, 1406 (9th Cir. 1996). Here, the answer is clearly that it would. This Court would have jurisdiction to hear a claim for infringement and dilution initiated by Sara Lee against Royal Queentex; thus, this Court also has jurisdiction to hear Royal Queentex's claim for a declaratory judgment that it is not infringing or diluting Sara Lee's trademark. Royal Queentex clearly had the right both to reject Sara Lee's offer to discuss settlement and to take an aggressive stance by immediately filing a declaratory judgment action upon receiving the cease and desist letter. *Hanson PLC v. Metro-Goldwyn-Mayer Inc.*, 932 F. Supp. 104, 108 (S.D.N.Y. 1996).

Sara Lee next offers the proposition that where a party mails a cease and desist letter, **[*13]** the opposing party may not steal away the choice of forum by immediately filing a declaratory judgment action. Prevailing law, including the cases cited by Sara Lee, do not support such a neat conclusion. In *Charles Schwab & Co., Inc. v. Duffy*, 1998 U.S. Dist. LEXIS 19606, 49 U.S.P.Q.2D (BNA) 1862, 1864 (N.D. Cal. 1998) (Chesney, J.), cited by Sara Lee, the court dismissed a declaratory judgment action because it could not exercise personal jurisdiction over defendant. In other words, *Schwab* is in full accord with the "mirror image" rule set forth in *Seattle Audubon*. However, the court noted that even if it had personal jurisdiction over the defendant, it would not permit the case to continue and reward the winner of the "race to the courthouse." *Id.* However, in *Schwab*, the court was not penalizing plaintiff for winning the race to the courthouse; rather, the court penalized plaintiff for the tactics used to win the race. "The race to the courthouse appears to have been 'won' by Schwab, at least in large part, due to a letter sent to Duffy's attorney that may have misled Duffy as to Schwab's intentions." *Id.* It is thus distinguishable on that point, as **[*14]** Queentex did not make any communication designed to mislead before filing suit.

In similar vein, Sara Lee cites *Mission Ins.* for that court's declination to exercise jurisdiction in the first-filed action because it was filed in anticipation of an expected action. 706 F.2d at 602. In *Mission Ins*, however, the court dismissed plaintiff's claim because plaintiff caused defendant to delay filing suit by representing that plaintiff was considering the merits of the claim. 49 U.S.P.Q.2D (BNA) at 1864. Again, here the record is bereft of any such assurances by Queentex.

In two additional cases cited by Sara Lee, *One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.*, 987 F. Supp. 317 (D.N.J. 1997) and *Heatron, Inc. v. Shackelford*, 898 F. Supp. 1491 (D. Kan. 1995), both courts repudiated plaintiff's choice, but only after finding an admission of anticipatory filing. *See One World*, 987 F. Supp. at 329 (finding "Gulf Coast admits in its brief, as it must, that it filed its declaratory judgment action in anticipation of One World's infringement action in New Jersey"); *see also Heatron*, 898 F. Supp. at 1495 **[*15]** (finding "Shackelford as much as admits that the suit in Oklahoma was filed in anticipation of Heatrons suit.")

While Sara Lee's letter is one factor this Court takes into consideration in determining whether the California action was filed in anticipation of the North Carolina action, a cease and desist letter itself is not dispositive unless it provides "specific, concrete indications that

a suit by Defendant was imminent." See _Ward v. Follett Corp._, 158 F.R.D. 645, 648 (N.D. Cal. 1994) (Whyte, J.); see also _Amerada Petroleum Corp. v. Marshall_, 381 F.2d 661, 663 (5th Cir. 1967). In _Guthy-Renker_, for example, defendant alleged that plaintiff's declaratory judgment action was brought pursuant to defendant's "notice of suit" letter. 179 F.R.D. at 271. There, the letter expressly stated that it was giving notice of the potential patent infringements in an attempt to avoid litigation. The court found that "[defendant's] letter neither provided nor intended to provide plaintiff with a specific, concrete indication of imminent suit." _Id._ at 272.

The letter at issue here commands a different result. Sara Lee's letter **[*16]** of October 21, 1999 provides, "We are directing this correspondence in the hope that this matter may be resolved amicably. L'EGGS products is willing to forego legal action to enforce its rights only if we receive prompt written assurances that Royal Queentex will immediately discontinue all use of any name containing the word 'LEG' or 'LEGS'." Sara Lee's letter was an invitation to settle the matter amicably, yet clearly intimated legal action if this effort was not quickly fruitful. In Sara Lee's motion, it admits that Royal Queentex spurned Sara Lee's offer to negotiate an amicable settlement by filing this action. (Motion, 11: 22-23). Sara Lee represented to the Court at oral argument that Michael Tsai admitted in his declaration that he understood the letter to constitute a threat of imminent suit. This allegation, however, is mistaken. It appears Sara Lee's counsel mistakenly credited Michael Tsai for statements contained in the declaration of Nolan Williams. This Court finds that Sara Lee's letter constituted specific, concrete indications of a legal dispute, but not specific, concrete indications that suit was imminent, and thus, under _Seattle Audubon_ properly provided **[*17]** a basis for a declaratory judgment.

Therefore, Royal Queentex's choice of forum will be accorded proper deference as this Court turns to the analysis of whether the balance of inconveniences substantially weighs in favor of transfer.

## B. Convenience of Parties

It is clear that it will be inconvenient for Sara Lee to litigate this matter in this judicial district. By the same token, it would be at least equally inconvenient for Royal Queentex to litigate this matter in the Middle District of North Carolina. For the reasons stated herein, Sara Lee has not met its burden of establishing the balance of inconveniences weighs highly in favor of transfer.

Sara Lee has pointed out that its corporate hosiery headquarters are over 2500 miles away in North Carolina. Its senior officers are in North Carolina; all relevant documents and records are located there as well. Additionally, Sara Lee has claimed that it would be more convenient for Night Dreams and Priscilla's, the other two parties to the North Carolina action, were this case was transferred to North Carolina for consolidated proceedings.

On the other end of the scale, Royal Queentex would surely be inconvenienced if it had **[*18]** to try this case in the Middle District of North Carolina. If forced to travel to North Carolina, Tsai asserts that he would have to shut down the business during the trial. Royal Queentex, a company with eight employees, would suffer a much greater financial burden than Sara Lee if forced to litigate on the other side of the country. To the extent Sara Lee would be better able to bear the travel costs, this factor weighs against transfer. _Kingsepp v. Kmart Corp._, 1997 U.S. Dist. LEXIS 21680, 1997 WL 269582 at *2 (E.D.N.Y. 1997); see also _Dwyer v. General Motors Corp._, 853 F. Supp. 690, 693 (finding [HN11]a court may also consider the relative means of the parties in deciding a transfer motion.)

## C. Convenience of the Witnesses

[HN12]One of the most important factors in determining whether to grant a motion to transfer

venue is the convenience of the witnesses. See _Jarvis v. Marietta Corp., 1999 U.S. Dist. LEXIS 12659_, *6, No. C 98-4951 MJJ (N.D. Cal. 1999). To demonstrate inconvenience, the moving party "should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action . . . The Court **[*19]** will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony." _Steelcase, Inc. v. Haworth, 41 U.S.P.Q.2D (BNA) 1468, 1470 (C.D. Cal. 1996)_. In balancing the convenience of the witnesses, primary consideration is given to third party, as opposed to employee witnesses. _Jarvis_ at *5. In sum, Sara Lee must provide information as to the identity and location of its third party witnesses, the content of their testimony, and indicate why their testimony is relevant to this case. _Id. citing Steelcase, 41 U.S.P.Q.2D (BNA) at 1470_.

This Court finds Sara Lee has made an inadequate record under _Steelcase_ in failing to specify its third party witnesses by identity, location, and testimonial content. Sara Lee has additionally failed in many other respects to provide the necessary showing of inconvenience to warrant transfer of this case. First, while Sara Lee has generally identified twelve third-party witnesses, [3] the companies or firms they work for, and the general subject matter of their testimony; Sara Lee has not explained specifically who the inconvenienced witnesses will be, what their **[*20]** specific testimony will be, and how that testimony will be relevant to this case. _Steelcase, 41 U.S.P.Q.2D (BNA) at 1470_. Therefore, it is difficult to evaluate the role of these witnesses and realize the impact of a venue change on their function. See _E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466 (E.D. Cal. 1994)_.

### FOOTNOTES

[3] Many of them are described only generally as corporate representatives who will testify on some general subject matter.

Second, five of the witnesses identified are not even located in North Carolina. For example, Millward Brown is located in Connecticut; NPD and Ink are both located in New York; QLM is located in Georgia; and DDB is located in Chicago, and beyond the compulsory process of either relevant forum. Sara Lee assets that because these witnesses are located on the east coast, they would be inconvenienced if forced to travel to the west coast. This argument is unpersuasive. Traveling to another state for any of these parties for the purpose of attending **[*21]** trial is inconvenient and burdensome. These witnesses will be inconvenienced whether they must travel to North Carolina or California. Third, Sara Lee does not even assert that their witnesses would be unable to travel to California to defend suit here. See _Cochran v. NYP Holdings, Inc., 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998)_. In sum, either Royal Queentex and its witnesses will have to travel to North Carolina or Sara Lee and its witnesses will have to travel to California. _HN13_ Where transfer would merely "shift" the inconvenience from one party to another, it should not be granted. _Id.; see also Arrow Electronics, Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989)_.

### D. Ease of Access to Evidence

Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. See _STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1556 (N.D. Cal. 1988)_. If this case remains in the Northern District of California, Sara Lee will likely have to ship documents; however, if this case is transferred to the Middle District of North Carolina, Royal Queentex **[*22]** will have to do the same. This factor, thus, does not weigh heavily for or against transfer.

### IV. Interests of Justice

## A. Familiarity of Each Forum with the Applicable Law

This factor does not weigh heavily in favor of transfer. While the Middle District of North Carolina has a greater familiarity with North Carolina law, Sara Lee's counter-complaint is not limited to infringement and dilution of the L'EGGS mark in the state of North Carolina. Sara Lee's claims include a cause of action for Royal Queentex's activities in "other states" where Royal Queentex sells LEGS AVENUE products. More than thirty percent of Royal Queentex's sales are in California, while six percent of its sales are in Texas. The California judiciary is equally as capable of handling claims governed by Texas and North Carolina law as North Carolina's judiciary would be in handling claims governed by Texas and California law. Thus, this factor does not weigh heavily in favor of transfer.

## B. Feasibility of Consolidation of Other Claims

HN14✦Transfer is favored where it will allow consolidation with another pending action and conserve judicial resources. See *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del. 1987). **[\*23]** Sara Lee correctly points out that there are two pending actions which could be consolidated. However, in the North Carolina action, the two additional defendants are Night Dreams of North Carolina, Inc. and Priscilla's of Greensboro, Inc. The status of these two additional parties to the North Carolina action has been the subject of dispute among the parties. Prior to filing suit against Night Dreams and Priscilla's, Sara Lee was informed that both would discontinue sales of Leg Avenue products until the dispute between Sara Lee and Royal Queentex was resolved. Nonetheless, Sara Lee filed suit against both parties in North Carolina. Royal Queentex argues that the timing of the second suit, in any event, is suggestive of the conclusion that it was instituted with an eye towards supporting this motion to transfer venue and in thwarting transfer of the North Carolina action to this forum. Notwithstanding Royal Queentex' assertion, the principal parties in both actions are Sara Lee and Royal Queentex. If transfer were warranted, it should occur in conformity with the first-to-file rule. See *Alltrade, Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

## [\*24] C. Local Interest in the Controversy

The Court finds that both California and North Carolina have significant interests in this controversy. Sara Lee conducts significant business in North Carolina. Its hosiery division is based there. However, Royal Queentex's sales in this state were approximately $ 1.98 million dollars in 1999. As the state with the most allegedly infringing sales, California also has a significant interest in the resolution of this dispute. See *SRAM Corp. v. Sunrace Roots Enterprise Co., Ltd.*, 953 F. Supp. 257, 259 (N.D. Ill. 1997). Therefore, this factor does not tip in Sara Lee's favor.

## D. Relative Court Congestion

HN15✦Relative court congestion is at best, a minor factor in the section 1404 calculus. "Docket congestion is not given much weight in a § (1404)(a) consideration." *IMS Health, Inc. v. Vality Technology, Inc.*, 59 F. Supp. 2d 454, 471 (E.D. Pa. 1999). Nonetheless, Sara Lee correctly points out that the caseload in this District is heavy. In the Middle District of North Carolina, according to the Judicial Caseload Profiles, published by the Statistical Office of the Administrative Office of the United States **[\*25]** Courts, the median time from filing to trial is sixteen months. Here, the median time from filing to trial is twenty-two months. Thus, in this one respect, the Middle District of North Carolina would be a slightly more convenient forum. However, this factor alone cannot control the overall balance of this Court's decision on Sara Lee's motion to transfer. *Id.*

## CONCLUSION

The Court finds that Sara Lee has failed to meet its burden under section 1404 of establishing that the balance of inconveniences weighs heavily in favor of transfer to the Middle District of North Carolina. The motion to transfer venue is accordingly DENIED.

**IT IS SO ORDERED.**

Dated: 3/1/2000

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE


Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 10139**
   View: Full
Date/Time: Wednesday, May 7, 2008 - 1:45 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
ℹ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.


Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help



About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.